UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN HAGA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | No. 1:15-cv-01268-TWP-MJD |
| ) | |
| SUPERINTENDENT New Castle Correctional ) | |
| Facility, ) | |
| ) | |
| Respondent. ) | |

**Entry Denying Petition for Writ of Habeas Corpus and Directing Entry of Final Judgment**

The petition of John Haga for a writ of habeas corpus challenges a prison disciplinary proceeding identified as No. NCF 15-06-0072. For the reasons explained in this Entry, Mr. Haga's habeas petition must be **denied**.

**A.   Overview**

Prisoners in Indiana custody may not be deprived of good-time credits, *Cochran v. Buss,* 381 F.3d 637, 639 (7th Cir. 2004) (per curiam), or of credit-earning class, *Montgomery v. Anderson,* 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision-maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974); *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000).

### B. The Disciplinary Proceeding

On March 2, 2015, Officer Manzo wrote a Conduct Report charging Mr. Haga with assault on staff in violation of Code A-11. The Conduct Report states:

> On above date and approximate time I Ofc Manzo and my partner Ofc Bates were conducting showers in RHU. When we went to restrain Off Haga J #220306 as we approached the shower to restrain Off Haga, he smacked . . . a cup from med line on the cuff port ledge that said cup and an unknown substance and the cup and substance flew toward my partner and I. I Ofc. Manzo asked Off Haga "really why did you do that?" Off Haga stated "because I've been in this shower for (2) two hours." I informed Off Haga that it was unnecessary to do that. As we began to walk down range to Off Haga's cell, he began speaking in vulgar and profane language and while doing so he also began to tense his body and clench his fists in an aggressive manner. As my partner and I reached cell #112 to place Off Haga back inside his cell we opened the cuff port to unrestrain him. As we unrestrained his left hand Off Haga turned around as he normally would but as he turned he snapped his hand into a fist and pulled his arm into his cell with his right hand still restrained. At this time my partner and I pulled the lead and cuffs back through the cuff port and was able to get a hold of Off Haga's hands and secure them on the cuff port ledge to unrestrain and secure the cuff port. At this time I Ofc Manzo did a body check and noticed I had sustained a cut on my left wrist & left index finger. No other injuries to report. End of Report.

Filing No. 17-1 at 1-2.

Officer Bates submitted a witness statement, which stated the following:

> On the above date and approx. time I Ofc Bates was escorting offender Haga, John #220826 from the shower to his assigned cell RHU 112. During the course of the escort Off Haga was tense and verbally aggressive. Off Haga was placed in his cell and Ofc Manzo removed the wrist restrain from Off Haga's left Hand. At this time Off Haga spun to his right and clenched his right hand into a fist and pulled his right arm inside the cuffport of his cell. I Ofc Bates maintained control of the lead strap and my partner maintained his control of the wrist restraints. In pulling the handcuffs inside his cuffport Off Haga injured Ofc Manzo's hand and broke the clasp of the RHU restraint lead strap. I Ofc Bates and Ofc Manzo were able to gain control of Off Haga's wrists and remove the wrist restraint from Off Haga's right wrist and secure the cuffport of cell RHU 112. At this time it was discovered that Officer Manzo's wrist watch was broken during the incident. RHU unit sgt was notified of the incident. End of Report.

Filing No. 17-2 at 1.

Mr. Haga was notified of the charge on June 11, 2015, when he received the Screening Report. He plead not guilty to the charge and requested five witnesses, a lay advocate, and the video of the incident. There was a note in the Screening Report from the hearing officer stating that there is no video recording of the incident because the video system for that area was broken.

Three of Mr. Haga's witnesses were fellow inmates and provided the following statements. Fellow inmate Charles Cheeks stated that he woke up and Mr. Haga "was be[]ing assault[ed] by staff." Filing No. 17-4. Fellow inmate Jack Hobbs testified that when the officers were removing Mr. Haga's cuffs, "he was spinning around like he always do[es] and the officer must of thought he was trying to pull in the cuffs." Filing No. 17-5. Another fellow inmate stated that he heard Mr. Haga say "why are you doing this? I'm not doing anything to force you to be aggressive with me," which he contends made it obvious that "the officers were being aggressive." Filing No. 17-6. Finally, Nurse Davis and Officer Pew both testified that they were not present during the incident in question. Filing No. 17-7; Filing No. 17-8.

A hearing was held on June 23, 2015. Mr. Haga stated at the hearing, "I was having a seizure. You can't prove that [Officer Manzo] did not have that cut." Filing No. 17-12. Based on Mr. Haga's statement, the staff reports, evidence from the witnesses, and confidential pictures of the incident, the hearing officer found Mr. Haga guilty. The hearing officer recommended and approved sanctions including a one-hundred-eighty-day earned-credit-time deprivation and a credit-class demotion.

**C.   Analysis**

Mr. Haga raises three claims in his habeas petition. The respondent addresses each of these claims in his response brief, and Mr. Haga did not file a reply brief. The Court will address each of Mr. Haga's claims in turn.

*1.     Video Evidence*

Mr. Haga's first claim is that he was denied video evidence at least twenty-four hours prior to the hearing as required by IDOC policy. As pointed out by the respondent, violation of IDOC policy does not provide a basis for habeas relief, but even if it did, in this instance, there was no video evidence to provide because the video system covering the area of the incident was broken. The fact that IDOC did not have a functioning video system on the date if this incident may be a violation of policy, however violation of a policy or guideline alone, does not constitute grounds for § 2254 relief. Relief pursuant to § 2254 is available only on the ground that a prisoner "is being held in violation of federal law or the U.S. Constitution." *Caffey v. Butler*, 802 F.3d 884, 894 (7th Cir. 2015). Prison policies, regulations, or guidelines do not constitute federal law; instead, they are "primarily designed to guide correctional officials in the administration of a prison . . . not . . . to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995).

Therefore, claims based on prison policy such as this one are not cognizable and do not form a basis for habeas relief. *See Keller v. Donahue*, 271 Fed. Appx. 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process"); *Rivera v. Davis*, 50 Fed. Appx. 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review."); *see also Estelle v. McGuire*, 502 U.S. 62, 68 n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas review.").

Moreover, even if Mr. Haga's claim is that he was not given the video evidence to which he was entitled, it is not a due process violation to deny an inmate evidence that does not exist.

*See Colwell v. Knight*, 2016 WL 2989056, *3 (S.D. Ind. 2016) ("The [Prison] Facility cannot produce video that does not exist."); *Foster v. Brown*, 2014 WL 4539984, *2 (S.D. Ind. 2014) ("An inmate does not have the right [under *Wolff*] to evidence that does not exist."). The record reflects that the video system covering the relevant area was broken at the time, and thus there was no recording of the incident. For these reasons, Mr. Haga is not entitled to habeas relief on this ground.

    2.    *Sufficiency of the Evidence*

Mr. Haga next challenges the sufficiency of the evidence supporting his conviction. As he argued at the disciplinary hearing, he again contends that he was having a seizure at the time of the incident rather than being combative with the officers.

The "some evidence" standard applied to challenges regarding the sufficiency of the evidence is lenient, "requiring only that the decision not be arbitrary or without support in the record." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999); *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted).

The Conduct Report by Officer Manzo and additional statement by Officer Bates describe the event in detail, and both officers state that Mr. Haga aggressively pulled his handcuffs through the cuff port causing injury to Officer Manzo. These statements alone can "provide[] 'some evidence' for the . . . decision," *McPherson*, 188 F.3d at 786, and they are corroborated by the other evidence on which the hearing officer relied, including the witness statements, which support the conclusion that Mr. Haga was involved in an altercation with the officers.

It is true that fellow inmate Jack Hobbs testified that the officers simply misinterpreted Mr. Haga's "spinning around like he always do[es]" as "trying to pull in the cuffs." Filing No. 17-5. But the hearing officer was not required to accept this testimony given the Officers' statements that Mr. Haga intentionally pulled the cuffs away in an aggressive manner. Indeed, when deciding whether there is sufficient evidence, the Court cannot make an "independent assessment of the credibility of witnesses[] or weigh[] . . . the evidence"; it instead must simply ask "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-46. Even "meager" proof will suffice so long as "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id*. This is a "lenient" standard, requiring no more than "a modicum of evidence." *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000), citing *Hill* and *Lenea v. Lane*, 882 F.2d 1171, 1175 (7th Cir. 1989).

Because the Court does not judge the credibility of witnesses who testified at the hearing, the Officers' testimony that Mr. Haga was being aggressive as they approached his cell and then acted on that aggression by violently pulling his cuffs away, is sufficient evidence for the hearing officer to conclude that Mr. Haga intentionally assaulted the officers and was not having a seizure. In sum, because there is "some evidence" that Mr. Haga assaulted staff the Court is unable to reverse the hearing officer's decision on this bases.

   3.  *Impartial Decisionmaker*

Mr. Haga's final claim is that he was denied an impartial decisionmaker. The decisionmaker was demonstrably impartial, says Mr. Haga, because he allegedly said that "all offenders were liars" and because he refused to consider the witness statements.

A prisoner in a disciplinary action has the right to be heard before an impartial decisionmaker. *Hill*, 472 U.S. at 454. A "sufficiently impartial" decisionmaker is necessary in order to shield the prisoner from the arbitrary deprivation of his liberties. *Gaither v. Anderson*, 236 F.3d 817, 820 (7th Cir. 2000) (per curiam). Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie*, 342 F.3d at 666; *see Perotti v. Marberry*, 355 Fed. Appx. 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Indeed, the "the constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed by the IDOC. *Piggie*, 342 F.3d at 666.

Even accepting the hearing officer's alleged statements as true, Mr. Haga has not provided clear evidence to rebut the presumption that his hearing officer was impartial. First, contrary to Mr. Haga's assertion that the hearing officer refused to consider the witness statements, the hearing officer indicated that he specifically considered those statements along with the other evidence in reaching his verdict. Second, the hearing officer's statement that inmates are liars, when viewed in the context that the hearing officer discounted Mr. Haga's and his fellow inmates' version of events, could simply reflect his assessment of the evidence. It was within the hearing officers discretion to credit the Officers' statements over all of the inmates' statements. Finally, and in any event, the facts as alleged by Mr. Haga are not similar to situations where courts have found the decisionmaker impermissibly biased. *See, e.g.*, *Perotti*, 355 Fed. Appx. at 43 (noting that the Seventh Circuit has concluded that "[d]ue process requires disqualification of a decisionmaker who was directly or substantially involved in the underlying incident" or "if his spouse is a crucial witness in the proceeding").

For these reasons, Mr. Haga has failed to overcome the presumption of impartiality. *See Piggie*, 342 F.3d at 666. Accordingly, Mr. Haga is not entitled to habeas relief based on this claim.

### D. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. If in fact Mr. Haga was left in the shower for two hours and then suffered a seizure, the circumstances of this incident were truly unfortunate. However, there was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this matter, and there was no constitutional infirmity in the proceeding which entitles Mr. Haga to the relief he seeks. Accordingly, Mr. Haga's petition for a writ of habeas corpus must be **denied** and the action dismissed.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 11/14/2016

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JOHN HAGA
220826
WESTVILLE - CF
WESTVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
5501 South 1100 West
WESTVILLE, IN 46391

Electronically Registered Counsel